## HAVERLY INVINCIBLE MINING CO. *v.* HOWCUTT.

*(In the Supreme Court of Colorado, Spring Term, 1883—Appeal from the County Court of Custer County).*

COURT—TRIAL BEFORE ONE NOT A JUDGE.  Parties to a litigation cannot by agreement confer jurisdiction to try a cause upon one not a judicial officer authorized by law to hold the Court, and when this appears in the record to have been the case, the cause must be sent back for trial.  This without commending the moral conduct of the party who takes advantage of the result.

HELM, J.  The original record in this case contains the following entry:  "By agreement of the parties this cause is heard by J. T. McNeely, Esq., sitting in place of the Court." That portion of the record purporting to be a bill of exceptions, is signed by J. T. McNeely.  An examination of this so called bill of exceptions discloses the facts that McNeely impanelled and instructed the jury, swore the witnesses, received the verdict, heard and overruled the motion for a new trial, and rendered the judgment appealed from.  It is unnecessary for us to determine whether or not we should ignore the contents of this document entitled a bill of exceptions, for if we accept as correct the views of counsel, and treat it as surplussage, and no part of the record, there yet remains in the record sufficient to apprise us of the fact that the Court abdicated for the time being his office, and that a stranger attempted to perform the duties thereof.

We cannot presume that McNeely acted in the capacity of referee; no order of reference appears in the record, but on the contrary it is expressly declared therein that he was "sitting in place of the Court."   There is an entire absence of anything tending to show that the parties attempted to avail themselves of the provision made for trials by referees.

The question presented for consideration therefore is:   Can parties by consent confer judicial power upon one who is not clothed therewith in the manner designated by law?   Or can suitors by consent legalize the effort of such a person to act in place of a Court and perform his official duties?

Our Constitution vests the judicial power of the State, except as therein otherwise provided, in certain Courts; the Consti-

tution and statutes designate the qualifications of the Judges who shall hold such Courts; also the method of electing or appointing them; how they may be impeached or removed, and how and by whom vacancies in judicial positions shall be filled. Ample provision is made by law for the trial of causes or the holding of terms in case of the sickness or absence of the presiding Judge, or where he is a party to the action, or is interested, or has been of counsel therein.

But no authority is given in the Constitution, and none could be given by statute, for parties litigant to choose whom they will for the purpose of sitting as a Court in the trial of a given cause; and the Judge himself cannot cast "his judicial robes upon the shoulders of any man" who might be acceptable to the parties in a particular suit. If this may be done in the County Court, we perceive no reason why it might not be done in the District Court; and if allowable in the latter, the members of this Court might select three persons agreeable to litigants, abdicate this bench, and review a given case by proxy; if they might review one case in this way, they might rid themselves of the work in a hundred. However agreeable such a method of transacting business would be to us, and to other Judges who might hail the respite from labor, we are compelled to condemn it as a clear violation of the spirit and letter of the Constitution and statutes.

Judge Cooley, in his work on Constitutional Limitations, at page 399, says: "If the parties cannot confer jurisdiction upon a Court by consent, neither can they by consent empower any individual other than the Judge of the Court to exercise his powers. Judges are chosen in such manner as shall be provided by law; and a stipulation by the parties that any other person than the Judge shall exercise his functions in their case would be nugatory, even though the Judge should vacate his seat for the purposes of the hearing."

In support of our position see the following additional authorities: *Winchester* v. *Ayres*, 4 G. Greene (Iowa), 104; *Hoagland* v. *Creed et al.*, 81 Ill., 506; *Bishop* v. *Nelson et al.*, 83 Ill., 601; *Beard et al.* v. *Converse*, 84 Ill., 513.

The transcript of record filed in this Court imports absolute verity; and in this case had nothing appeared therein showing

that McNeely presided at the trial, we would have ignored an error assigned upon the ground that he did so. But the record is not silent, and we must declare the error fatal.

We are not, however, to be understood as commending the moral conduct of appellant in presenting this question after having stipulated, as he did, for the trial of the cause in this way; had we jurisdiction of moral estoppels, our conclusions in this case might be different.

A consideration of the remaining errors assigned is unnecessary. The cause will be reversed and remanded for a new trial. *Reversed.*

*George S. Adams,* for appellant.

*A. W. Brazee,* for appellee.

## ZELL'S APPEAL.

*(Supreme Court of Pennsylvania, May 7, 1883)*

ESTOPPEL. A person cannot be estopped from declaring his signature to a note a forgery merely because *after* plaintiff had taken the note he did not notify her that it was a forgery as soon as he knew that his name purported to be signed to it.

Opinion by MERCUR, C. J.

The learned Judge concedes the weight of testimony does establish that the signature purporting to be that of the appellant is forged. There is no evidence that he directed or authorized it to be written. Inasmuch, however, as he did not, when first informed of the forgery, forthwith seek the plaintiff in the judgment and proclaim the forgery, the Court held this to be such an acquiescence on his part as to estop him from now setting it up. We think the evidence shows no element of an estoppel. He neither said nor did anything to induce her to take the note. He had no knowledge before she took it that his name purported to be subscribed thereto. It is not shown that she could have protected herself in any manner against loss, had he notified her as soon as he obtained information of the forgery. No law imposed such prompt action on him. The forger died insolvent a few days thereafter. Prompt disclosure would not have availed her. She could not have acquired anything thereafter, and she released nothing. It was clearly error not to open the judgment and permit the appellant to make defense. Decree reversed at the costs of the appellee, rule made absolute, and a *procedendo* awarded.